UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| KEVIN HAWKINS, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 2:20-2549 |
| § | |
| BENJAMIN B. WAGNER, United States § | |
| Attorney, et al., § | |
| § | |
| Defendants. § | |
| § | |

**MEMORANDUM AND ORDER**

Kevin Hawkins has sued several prosecutors, law-enforcement agents, and pretrial services officers, alleging that he was wrongfully convicted and falsely imprisoned, in violation of his civil rights. (Dkt # 1). Hawkins represents himself and has been granted leave to proceed without prepaying fees. (Dkt. # 4). At the court's request, Hawkins supplemented the pleadings with a more definite statement of his claims. (Dkt. # 6). Based on the review required under 28 U.S.C. § 1915(e)(2)(B), the court concludes that this case must be dismissed and does so by separate order. The reasons are explained below.

**I.    Background**

Hawkins is a resident of Sacramento, California. (Dkt. # 1, at 2). In October 2010, a federal grand jury in the United States District Court for the Eastern District of California, Sacramento Division, returned an indictment against Hawkins and two codefendants, Paul Yoshi Moore and Timothy Wayne Lee, charging them with multiple counts of producing child pornography and sex trafficking of a minor. *United States v. Hawkins et al.*, Case No. 2:10-CR-

00458 (E.D. Cal.).[1]  Moore and Lee pleaded guilty to the counts asserted against them in a superseding indictment.  (Crim. Dkt. # 39).  The grand jury returned a second superseding indictment against Hawkins in October 2011, charging him with: three counts of aiding and abetting the production of child pornography involving visual depictions of a minor, A.B., also known as "Thalia" (counts one, two, and four); two counts of transporting or distributing child pornography (counts three and five); one count of sex trafficking involving a minor (count six); one count of benefiting from sex trafficking of a minor (count seven); and one count of witness tampering (count eight).  (Dkt. # 1, at 11; Crim. Dkt. # 57, at 1-9).

The facts underlying these offenses are detailed in the Presentence Investigation Report, which described Hawkins's involvement with internet websites used to promote the sexual exploitation of young women and underage girls.  The Report includes the following paragraphs:

> In the summer of 2006, the Sacramento-based Innocence Lost Task Force conducted an undercover investigation of local pimps who use internet websites to advertise girls for prostitution.  Two of the websites investigated were Craigslist.com and MyRedBook.com.  Both are Internet websites open to a global audience of Internet users, and both sites provided advertisements featuring girls and young women who promoted their services as prostitutes.  During the investigation, agents learned that a Sacramento man by the name of "Yoshi" was taking pictures of prostitutes, both adults and minors, and then creating advertisements and uploading pictures to the prostitution websites in return for a fee paid by either the girl or her pimp.
>
> "Yoshi" was identified a Paul Yoshi Moore.  Moore met Kevin Hawkins, also known as Ket T. Hawkins, shortly after Hawkins became a user of the MyRedbook.com forum in June 2005.  Hawkins used the name "lightbrightman" in the MyRedBook.com forum.  Users of the forum were known as "hobbyists"  Hobbyists were persons who regularly employed prostitutes from the

---

[1] The court takes judicial notice of court records from Hawkins's criminal proceeding, which forms the basis of his civil action.  *See Almont Ambulatory Surgery Ctr v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) ("Courts may take judicial notice of public records, including court records from another case.") (citing *United States v. Howard*, 381 F.3d 873, 876 n. 1 (9th Cir. 2004)).  Unless otherwise noted all docket entry references (Dkt. # _) are to this civil action.  All criminal docket entry references (Crim. Dkt. # _) are to Hawkins's criminal proceeding in Case No. 2:10-CR-00458.

2

> MyRedBook.com website, and then engaged in online conversations in the forum with other hobbyists. These conversations in the forum often include critiques or discussions about specific girls, who were sometimes referred to as "providers."
>
> Hawkins controlled an unoccupied house on Demaret Drive in South Sacramento. Hawkins told Moore he was thinking about leasing the house to prostitutes. According to Moore, Hawkins liked the idea of having ready access to prostitutes for sex. Sometime between January and June 2006, Hawkins agreed to lease the property to Moore for $1,200 per month and allow him to use it as a studio to take pictures, as Moore had previously taken photographs in the apartments and hotels where girls worked as prostitutes.
>
> Timothy Wayne Lee was identified as a pimp in the Sacramento area who brought young girls to the Demaret Drive property to obtain sexually explicit photographs from Moore for prostitution advertisement.
>
> Hawkins was indicted on charges involving the production and transportation of visual depictions of minors engaged in sexually explicit conduct in October 2010. Hawkins was taken into custody on November 2, 2010. While in custody, on May 21, 2011, Hawkins used another inmate's PIN code and made a recorded call to his daughter who was living in Southern California. During the call, Hawkins attempted to persuade his daughter to go to her grandfather's house, take the computer that Hawkins had purchased for him, and destroy it. When his daughter asked the reason why, Hawkins stated he did not want anyone "messing with Papa." On June 6, 2011, the mother of Hawkins' daughter retrieved the computer. Agents seized the computer from said individual on June 27, 2011, and found images of a minor engaged in sexually explicit conduct as indicated in the indictment.

(Crim. Dkt. # 454, at 4-5, ¶¶ 5-9). The report contained additional information that Hawkins had sex with A.B., a 16-year-old prostitute who used the name "Thalia," and took sexually suggestive photographs of her, knowing that she was a minor. The Presentence Report stated:

> Soon after he joined MyRedbook.com, Hawkins began to post reviews of the girls with whom he had sex. At some time no later than early January 2006, Hawkins had sex with A.B., a 16-year-old prostitute (born in October 1989) who used the name "Thalia" on her MyRedBook.com advertisements. According to Moore, he warned Hawkins in September 2005 that there were "strong rumors" that Thalia was minor. In December 2006, Moore warned another MyRedBook.com user to keep Thalia out of the "mixer" (a gathering that MyRedBook.com users and prostitutes are invited to hook up with one another for sex) because of her minor status. As soon as Moore learned that Thalia was a minor, he informed Hawkins of this fact. However, Hawkins continued to engage in numerous sexual encounters with Thalia. In fact, Thalia lived and worked out of Hawkins' house for approximately one week prior to Moore assuming occupancy of the Demaret

3

property. On several occasions, Hawkins extorted sex from Thalia in exchange for a favorable posting.

Hawkins quickly became one of MyRedBook's top reviewers, promoting the work of numerous prostitutes, including Thalia. For example, in one postdated January 7, 2006, Hawkins rated Thalia a "9" in looks, a "10" in service, and wrote, "Young and only 18!!!!!!!!"

In August 2006, Moore took sexually explicit photographs of Thalia at the Demaret Drive studio. These photos show Thalia in the nude, lasciviously displaying her genitalia. Hawkins is seen in the background of at least two of the sexually explicit photographs. According to Moore, Hawkins knew these images were to be used in prostitution advertisements that were to be uploaded to MyRedBook.com. Some of the images taken during this photo shoot were uploaded as part of Thalia's prostitution advertisement. As a result of these advertisements, Thalia received calls/business from individuals seeking sexual services. From her earnings, she would reimburse Moore for the photographs.

After being indicted in 2010, Hawkins consented to a search of a computer that he had in his residence. Agents found several pictures that Hawkins had taken of A.B. with a Pentax camera on or about February 12, 2007, wherein A.B. is in the shower at Hawkins' residence on Caceres Way in Sacramento. Two of the images were identical to the images posted by Hawkins to the MyRedBook.com forum on February 12, 2007  Forensic examiners found duplicates of these photos, as well as the entire series of pictures from that date, on three hard drives seized from Hawkins. A fourth hard drive, which was seized on June 2011, contained evidence that Hawkins used the computer when he made the MyRedBook.com forum postings described above.

(*Id.* at 5-6, ¶¶ 10-13).

Shortly before his trial was set to start in September 2012, Hawkins moved to fire his defense counsel and to represent himself. (Crim Dkt. # 85). At a hearing held in early September, the trial court denied Hawkins's request. (Crim. Dkt. # 86).

At the start of trial, the government moved to dismiss two counts against Hawkins (counts four and five), reducing the number of charges that he faced to six. (Dkt. # 1, at 11; Crim. Dkt. # 105). According to Hawkins, Moore testified against him as part of his plea agreement with the government. (Dkt. # 6, at 3). Moore reportedly testified that Hawkins had no part in the pornography and sex-trafficking operation that Moore operated, although Moore implied that

4

Hawkins "should have known" what was going on. (*Id*.). At the end of October 2012, a jury found Hawkins guilty on the witness-tampering count, but was unable to reach a verdict on the child pornography and sex-trafficking counts, resulting in a mistrial on those. (Crim. Dkts. # 126, # 127).

Court records that Hawkins filed numerous interlocutory appeals, which delayed his sentencing for several years. (Crim. Dkts. # 179, # 279, # 335, # 451). After spending most of the time after his 2010 arrest in custody, he was released on bond in September 2015 while waiting sentencing. (Crim. Dkt. # 390).

Hawkins returned to custody on a bond revocation petition January 2016. (Crim. Dkts. # 428, # 429, # 431). At a hearing held in March, the district court sentenced Hawkins to a 78-month prison term on the witness-tampering conviction. (Dkt. # 6, at 2). The other counts were dismissed. Hawkins was released from federal prison in October 2016. (*Id*.).

In March 2017, the Ninth Circuit reversed Hawkins's witness-tampering conviction and remanded for further proceedings. The appellate court held that denying Hawkins the right to represent himself at trial violated *Faretta v. California*, 422 U.S. 806 (1975). The government declined to prosecute further and in June 2020 moved to dismiss the indictment under Rule 48(a) of the Federal Rules of Criminal Procedure. The motion was promptly granted. (Crim. Dkts. # 544, # 545). This civil action was filed in December 2020.

## II.     The Civil Rights Allegations

Hawkins seeks damages for alleged misconduct by the prosecutors, agents, and pretrial services officers involved in his criminal case, alleging that it caused his wrongful conviction and six years of false imprisonment. (Dkt. # 1). Hawkins sues the following defendants in their individual and official capacities: (a) United States Attorney Benjamin B. Wagner; (b) former

United States Attorney Scott W. McGregor; (c) Executive Assistant United States Attorney Laura D. White; (c) Assistant United States Attorney Kyle F. Reardon; (d) Assistant United States Attorney Todd A. Pickles; (e) Assistant United States Attorney Mathew Craig Theusen; (f) Sacramento Police Department Detective Derek Stigerts; (g) FBI Special Agent Minerva Shelton; (h) Pretrial Services Officer Renee M. Basurto; (i) United States Appellate Chief Camil A. Skipper; (j) Pretrial Services Officer Nisha Modica; and (k) Sacramento County Sheriff Scott Jones (Dkt. # 1, at 7; Dkt. # 6, at 5-23). Although Hawkins also names "Does 1-100" as defendants, he has dismissed or withdrawn claims against all the John and Jane Doe defendants who he has not been able to identify. (Dkt. # 6, at 23).

The claims against the named defendants are analyzed below.

### A.     The Claims Against the Prosecutors

Hawkins alleges that Wagner and McGregor, both of whom served as United States Attorney for the Eastern District of California, are liable because they reviewed and approved prosecutions brought by their subordinates. (Dkt. # 6, at 6, 8). Hawkins alleges that Executive Assistant United States Attorney White and Assistant United States Attorneys Reardon and Theusen, also reviewed the evidence and could have refrained from approving his prosecution, but did not do so. (*Id*. at 9, 11, 12). Hawkins also alleges that Assistant United States Attorney Pickles conducted the jury trial despite what Hawkins characterizes as the lack of evidence against him. (*Id*. at 12-13).

Hawkins alleges that Wagner, McGregor, White, Reardon, Pickles, Theusen, and Appellate Chief Skipper, "fabricated evidence" against him, using Moore's testimony to prove the offenses alleged in the show that Hawkins committed the offenses lodged against him in the superseding Indictments. (Dkt. # 6, at 29-33). Hawkins does not specify what evidence was fabricated, but he

refers to several computer "file names" purporting to be "visual depictions" of "sexually explicit conduct" by the minor known as A.B. (*Id*.). This conduct, Hawkins alleges, was the basis for the charges against both him and Moore. (*Id*.).

Hawkins alleges that White knowingly withheld exculpatory evidence that A.B., who was working as "an underage prostitute," was the subject of a sting operation targeting Moore. (Dkt. # 6, at 34). Hawkins alleges that Wagner, McGregor, Reardon, Pickles, and Theusen all knew about this evidence and "conspired" to conceal it from Hawkins to create a false impression that he knew A.B. was a minor, even though he had been shown identification stating her age as 23. (*Id*.).

Hawkins appears to allege that White, Wagner, McGregor, Reardon, Pickles, and Theusen also conspired to conceal exculpatory evidence from the grand jury. (Dkt. # 6, at 34). He describes this evidence as photographs of A.B. in the shower at Hawkins's home. (*Id.*). Hawkins contends that the photographs, which were taken by a government witness and informant named "Giselle," were "back dated to August 27, 2007, which would make it appear that A.B. was 17 years old, a minor," at the time. (*Id*.).

Hawkins accuses Wagner, McGregor, White, Reardon, Pickles, Theusen, and Skipper of "malicious prosecution" for pursuing charges against him after he refused to testify as a witness against Moore and Wayne for their roles in the sex-trafficking business that Moore operated from a home that he leased from Hawkins. (Dkt. # 6, at 35). Hawkins alleges that Pickles also violated his right to a speedy trial under the Sixth Amendment to the United States Constitution. (Dkt. # 6, at 36). Hawkins states that he filed a motion with the district court, asserting Speedy Trial Act violations, which the court granted and which resulted in the "first dismissal" without prejudice of the sex-trafficking and related child-pornography counts against Hawkins. (*Id*.).

Hawkins alleges that White and Pickles "prevented" him from exercising his constitutional rights by opposing his request to represent himself. (Dkt. # 6, at 36-37). Hawkins explains that the trial court appointed "conflicted counsel" to represent him "against his will" after holding a *Faretta* hearing. (*Id*. at 36-37). Hawkins appears to blame the trial court's decision to appoint counsel as well as the counsel the court appointed for his conviction and for the 78-month sentence for witness tampering. (*Id.* at 37).

Hawkins also alleges that Skipper, who served as chief of the Appellate Division with the United States Attorney's Office, was related to his daughter's mother, Charlotte Corbin, who Hawkins describes as his ex-wife. Hawkins alleges that Skipper conspired with other prosecuting attorneys by concealing Skipper's relationship to Hawkins when he was arrested. (Dkt. # 6, at 28). Hawkins alleges that when he was charged with witness tampering, Skipper contacted his daughter, who was a witness, and encouraged her to retain an attorney. (*Id.*). Hawkins alleges that Skipper conspired with the other prosecutors to turn Corbin and his daughter against him because Skipper believed that Hawkins had previously assaulted Corbin. (*Id.*). Both Corbin and Hawkins's daughter were government witnesses at Hawkins's trial and testified about the witness-tampering charges. (*Id.*).

B.     **The Claims Against Detective Stigerts**

Hawkins alleges that Sacramento Police Department Detective Stigerts was present at the scene of his arrest in 2010 and viewed evidence on a computer recovered from Hawkins's home. (Dkt. # 6, at 15). Hawkins contends that Stigerts should have refrained from approving the prosecution against him because there was no concrete evidence that Hawkins was involved with Moore and Lee in sex trafficking or in producing child pornography. (*Id*. at 15, 17).

### C.     The Claims Against Agent Shelton

Hawkins alleges that FBI Special Agent Shelton violated his rights when she "knowingly expos[ed] information" that was "privileged" during her testimony at his jury trial. (Dkt. # 6, at 17). Hawkins states that Agent Shelton testified that he had declined to answer questions during an interview, commenting that he did not wish to "incriminate himself," which drew an objection from defense counsel for violating the right to remain silent. (Dkt. # 6, at 26). The trial court found that the prosecutor committed error by asking Agent Shelton questions about Hawkins's statement when he had "take[n] the Fifth Amendment and d[id] not wish to testify." (*Id*.) (citing R.T. 511:25, 512:1-10). Hawkins alleges that Agent Shelton is liable because she violated his "Fifth Amendment Constitutional right to a trial free from deliberate prejudicial error." (*Id*. at 17).

### D.     The Claims Against the Pretrial Services Officers

Hawkins alleges that Basurto, as a pretrial services officer, granted him permission to attend Calvary Church in Elk Grove while he was on bond awaiting sentencing in 2015. (Dkt. # 6, at 19). Hawkins alleges that Basurto then "conspired" with another pretrial services officer, Modica, to attend the same church and spread rumors among church members that Hawkins was a "convicted sex offender," although he had not been convicted of those charges. (*Id*.). Hawkins alleges that Modica later filed a written report with Basurto, claiming that Hawkins was stalking her and her children, and that the report was one reason the district court revoked his bond after he was "three minutes late" returning home. (*Id.* at 19-20).

### E.     The Claims Against Sheriff Jones

Hawkins alleges that while Hawkins was a pretrial detainee and then a presentence defendant in the Sacramento County Main Jail from 2010 and 2016, Sheriff Jones, the supervisory official in charge of the Sacramento County Main Jails, was aware that Hawkins was representing

himself but intentionally restricted his law library privileges. (Dkt. # 6, at 21). Hawkins alleges that Jones hindered his access to court and caused him to be negligent or deficient in his self-representation before and after a mistrial was granted in his criminal prosecution. (*Id.*). Hawkins alleges that Jones shared Hawkins's work product and defense strategies with the prosecutors. (*Id.*). Hawkins alleges that when he developed an abscessed tooth, Jones refused to allow him to see a dentist until "hybrid attorney Phillip Cousins" filed a motion with the district court TO BE APPOINTED as stand-by counsel. (*Id.*). Hawkins alleges that he was "assaulted and molested" by other jail inmates. (*Id.*). Hawkins also alleges that he was also denied medication, a mattress, and special "medical shoes." (*Id.*).

### F. The General Allegations

Hawkins alleges that he suffered "severe emotional distress" after he was labeled a sex offender and subjected to false charges that the prosecutors refused to dismiss. (Dkt. # 6, at 41). Hawkins alleges that he required counseling three times a week for nearly a year after his release from the Bureau of Prisons in 2016. (*Id.* at 42). Hawkins sues under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the defendants are liable for violating his rights under the Fifth, Eighth, and Fourteenth Amendments (Dkt. # 1, at 3). Hawkins seeks $19 million in compensatory and punitive damages from all of the defendants for his wrongful conviction and false imprisonment. (*Id.* at 23).

## III. The Legal Standards

Because Hawkins has been granted permission to proceed without prepayment of the filing fee, his complaint is subject to mandatory review by the court under 28 U.S.C. § 1915(e)(2), which must dismiss the complaint if it determines that the action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who

is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam).  Section 1915(e)(2) was enacted "largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  A complaint must be dismissed if it lacks an arguable basis in either law or fact.  *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (citing *Neitzke*, 490 U.S. at 325).

"The language of § 1915(e)(2)(B)(ii)," which authorizes summary dismissal for failure to state a claim upon which relief may be granted, "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (cleaned up).  A mere "formulaic recitation of the elements of a cause of action" is insufficient to state a claim under this standard.  *Id.*

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is typically limited to the face of the complaint, but may incorporate by reference documents that were referenced extensively in the pleadings.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). A reviewing court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  *Mudpie, Inc. v. Travelers Casualty Ins. Co. of Amer.*, 15 F.4th 885, 889 (9th Cir. 2021) (citation omitted).  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial

notice[.]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

Because Hawkins represents himself, his pleadings are subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). The rule of liberal construction "is particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). A liberal construction does not mean, however, that the court will supply essential elements of a claim that are absent from the complaint. *See Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (citation omitted). The court must grant leave to amend if it appears that the plaintiff can correct the defects in his complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). But if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

**IV.     Analysis**

   **A.     Prosecutorial Immunity**

Hawkins sues several prosecutors, including Wagner, McGregor, White, Reardon, Pickles, and Theusen, for actions taken in connection with approving and prosecuting the criminal charges against him before the grand jury and at trial. Prosecutors are entitled to immunity for actions taken to pursue criminal charges in court. *See Imbler v. Pachtman*, 424 U.S. 409, 422-23, 431 (1976) (judges and grand jurors acting within the scope of their duties are entitled to immunity and prosecutors are also absolutely immune from a civil suit for damages for initiating a prosecution and in presenting the state's case). Absolute immunity encompasses a prosecutor's activities as an advocate, which include "activities intimately associated with the judicial phase of the criminal

process." *Id*. at 430.  Absolute immunity turns on the function of the conduct, not "whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993).

Hawkins does not allege facts showing that he was arrested and charged without probable cause.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994) (there is no "substantive right under the Due Process Clause . . . to be free from criminal prosecution except upon probable cause."). Hawkins also fails to articulate a plausible claim that would deprive the prosecutors of absolute immunity for approving the charges against him or presenting the government's case in court. Hawkins's claims against Wagner, McGregor, White, Reardon, Pickles, and Theusen are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) because these defendants are entitled to immunity from his claims for monetary relief.

  **B.**  **Witness Immunity**

Hawkins alleges that Agent Shelby violated his rights by her trial testimony that Hawkins declined to give a statement when interviewed about the offense because he did not want to incriminate himself.  "Witnesses, including police officers, are absolutely immune from liability for testimony at trial . . . and before a grand jury." *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015) (internal citation omitted).  Testifying witnesses are absolutely immune from liability for their trial testimony.  *See Rehberg v. Paulk*, 566 U.S. 356, 366-67 (2012) (tracing absolute immunity for witness testimony back to common law); *see also Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001).  Absolute immunity from damages applies "even if the witness knew the statements were false and made them with malice." *Briscoe v. LaHue*, 460 U.S. 325, 330-32 (1983).

Because Agent Shelby is entitled to immunity for statements she made while testifying as a witness, Hawkins's claims arising from her testimony are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Quasi-Judicial Immunity: The Claims Against the Pretrial Services Officers

Hawkins sues Basurto and Modica for actions taken as pretrial services officers that Hawkins alleges resulted in the revocation of his bond for violating the conditions of his supervised release while he was awaiting sentencing in 2016. Absolute quasi-judicial immunity extends to court personnel for actions taken in connection with judicial proceedings. *See Mullis v. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process.") (citation omitted). This includes actions by probation and pretrial services officers to monitor and enforce compliance with conditions of supervised release. *See Dunlap v. Pretrial Services*, 181 F. App'x 673, 673, 2006 WL 1389805, at *1 (9th Cir. 2006) (the plaintiff failed to state a claim against pretrial services officers, who were protected by judicial immunity); *see also Whitesel v. Sengenburger*, 222 F.3d 861, 869 (10th Cir. 2000); *Turner v. Steeh*, 2009 WL 2969556, at *3 (E.D. Mich. Sept. 11, 2009) (probation and pretrial services officers were entitled to judicial immunity from suit for actions taken to evaluate and ensure compliance with supervised release).

Because Basurto and Modica are entitled to immunity for actions taken in their capacity as pretrial services officers, the claims against them are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii).

**D.     The Statute of Limitations and the Remaining Claims**

Hawkins's remaining claims against Sheriff Jones, Detective Stigerts, Agent Shelton, and Skipper are barred by the statute of limitations. Hawkins's claims against Sheriff Jones and Detective Stigerts, both state actors, arise under 42 U.S.C. § 1983. His claims against Skipper and Agent Shelton, both federal employees, are governed by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under [42 U.S.C.] § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*.").

For claims brought in federal court under 42 U.S.C. § 1983, state law determines the statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985). A federal court looks to the forum state's "general or residual personal injury statute of limitations." *Owens v. Okure*, 488 U.S. 235, 250 (1989); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999) ("[F]ederal courts apply the forum state's personal injury statute of limitations for section 1983 claims."). Similarly, the forum state's "personal injury statute of limitations properly applies to *Bivens* claims." *Van Strum*, 940 F.2d at 410.

In California, the statute of limitations for personal injury claims is two years. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Code § 335.1, effective January 1, 2003). While the court must apply California's two-year statute of limitation for Hawkins's claims, federal law determines when a civil rights claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The statute of limitations period generally begins when a plaintiff has

knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Hawkins's claims against Detective Stigerts arose in October 2010, when the grand jury returned the indictment against him. *See Wallace*, 549 U.S. at 391. Hawkins's claims against Skipper arose in 2011, when he was charged with witness tampering in the second superseding indictment. *See id*. Hawkins's claims against Sheriff Jones for misconduct and conditions of confinement at the Sacramento County Jail from his 2010 arrest to his 2016 transfer to the Bureau of Prisons arose in 2016, at the latest. Hawkins's claim that Agent Shelton or others engaged in malicious prosecution by using fabricated evidence to pursue sex-trafficking and child pornography charges arose when those charges were dismissed in 2016. *See McDonough v. Smith*, — U.S. —, 139 S. Ct. 2149, 2161 (2019).

Hawkins did not file his civil rights complaint until December 2020. Because he does not allege any facts that would justify extending the statute of limitations, his claims against Shelton, Jones, Stigerts, and Skipper are barred by the statute of limitations. *See Fink*, 192 F.3d at 916 (describing three conditions required to equitably toll a statute of limitations under California law). The bar is obvious from the face of Hawkins's complaint and the record before this court. Hawkins's untimely claims are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B); *Franklin v. Murphy*, 745 F.2d 1221, 1228-30 (9th Cir. 1984).

**V. Conclusion and Order**

This case must be dismissed under 28 U.S.C. § 1915(e)(2)(B) because Hawkins seeks monetary damages from defendants who are immune from such relief and any remaining claims are barred by limitations. Because leave to amend would be futile, the dismissal is with prejudice.

An order of final judgment is separately entered.

SIGNED on December 13, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge